# In the United States Court of Federal Claims

No. 19-1559C
(Filed: November 20, 2019)
(Refiled: November 27, 2019)[1]

```
*********************************************
                                            *
IDEOGENICS, LLC,                            *
                                            * Pre-award bid protest; Standing; Ripeness;
            Plaintiff,                      * Motion to Dismiss; Lack of Subject Matter
                                            * Jurisdiction; SBA; HUD; Substantial
     v.                                     * Chance
                                            *
THE UNITED STATES,                          *
                                            *
            Defendant,                      *
                                            *
     and,                                   *
                                            *
COMPU-LINK CORPORATION,                     *
D/B/A CELINK                                *
                                            *
            Defendant-Intervenor.           *
                                            *
*********************************************
```

*Jerry A. Miles*, Deale Services, LLC, Rockville, MD, for Plaintiff.

*Douglas K. Mickle*, Assistant Director, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., with whom were *Jonathan E. English*, Trial Attorney, U.S. Department of Housing and Urban Development, Office of General Counsel, and *Beverley E. Hazlewood*, Trial Attorney, U.S. Small Business Administration, Office of General Counsel, for Defendant.

*Aron C. Beezley*, Bradley Arant Boult Cummings LLP, Washington, D.C., for Defendant-Intervenor.

## ORDER

**Damich**, Senior Judge.

On October 7, 2019, Plaintiff, Ideogenics LLC ("Ideogenics"), filed a pre-award bid protest complaint for injunctive, declaratory, and monetary relief with respect to the sole-source

---

[1] This reissued, unsealed opinion contains the parties' proposed redactions, which were timely filed on November 26, 2019.

Notice of Intent to Award ("Notice") Solicitation No. 86611491R00001, issued by the U.S. Department of Housing and Urban Development ("HUD"). The Notice states that HUD intends to award a sole-source contract for loan and document management services to Compu-Link Corporation, D/B/A Celink ("Celink"), but invites capability statements from interested parties for the purpose of determining whether a competitive procurement is in the best interest of the Government. According to Ideogenics's Complaint, the Notice describes a "follow-on" requirement to a previous award within the SBA's 8(a) Business Development Program, and by failing to obtain SBA's prior approval to remove the procurement from the 8(a) program, HUD thereby violated FAR § 19.815 and 13 C.F.R. § 124.504(d).

In addition to its Complaint, Ideogenics filed a Motion for Temporary Restraining Order ("TRO") and/or Preliminary Injunction, ECF No. 3 ("Pl.'s Mot. for TRO and/or Preliminary Injunction"), which the Court denied on November 7, 2019, after hearing oral arguments from the parties. *See* ECF No. 32.

On October 10, 2019, Celink, the putative awardee of the solicitation at issue, filed a motion to intervene, which the Court granted on October 15, 2019. ECF No. 16. On October 21, 2019, Celink filed its response to Plaintiff's Motion for TRO and/or Preliminary Injunction.

On October 21, 2019, the Government filed its response to Plaintiff's Motion for TRO and/or Preliminary Injunction and moved to dismiss the protest on grounds of ripeness and standing. Def.'s Opp. to Pl.'s Mot. for A Temporary Restraining Order and Preliminary Injunction and Def.'s Mot. to Dismiss, ECF No. 26 ("Def.'s Mot. to Dismiss"). On November 4, 2019, Ideogenics filed its response. Pl.'s Resp. to Def.'s Dismissal Mot. and Def.'s Preliminary Injunction Mot. Opp., ECF No. 31 ("Pl.'s Reply").

On November 7, 2019, the Court heard oral arguments on Plaintiff's Motion for TRO and/or Preliminary Injunction and the Government's Motion to Dismiss. After hearing from the parties, the Court denied Plaintiff's Motion for TRO and/or Preliminary Injunction. The Court took under advisement the parties' arguments concerning the Government's Motion to Dismiss.

After considering the parties' arguments and materials presented, and for the reasons set forth below, the Court hereby **GRANTS** the Government's Motion to Dismiss.

I.     FACTS

*A. Ideogenics' Background*

Ideogenics is a government consulting firm that provides a variety of services. Ideogenics entered the SBA's 8(a) program in 2008 and graduated from that program in 2017, that is, Ideogenics no longer qualifies under the 8(a) program. *See* Def.'s Mot. to Dismiss, ECF No. 26, Ex. B, at 20 (SBA profile of Ideogenics, LLC). But, Ideogenics still holds a Small Disadvantaged Business Certification and HUBZone Certification from the SBA. *Id.*

*B. HUD's Prior Solicitations Within The SBA's 8(a) Program*

Since their inception in 2000 through 2013, HUD combined loan servicing requirements for Secretary Held mortgages and Home Equity Conversion Mortgages ("HECM") — i.e., reverse mortgages — into one solicitation, and placed the requirements in the SBA's 8(a) Business Development ("BD") Program.  Def.'s Mot. to Dismiss, Ex. B, at 2 (Decl. of Edgar Cross).  After several companies failed to adequately perform under these contracts, HUD separated the loan servicing requirements into three distinct procurements.  Def.'s Mot. to Dismiss at 4–5.  The companies that were awarded these separate contracts similarly failed to perform to HUD's satisfaction,[2] and HUD eventually cancelled all of the solicitations in March 2019.  *Id.* at 5–6.

### C.  HUD Recombines Loan Servicing Requirements Into One Procurement

Thereafter, HUD recombined the requirements into one solicitation.  *Id.* at 6–7.  Due to an extended period of time since the loan servicing requirements were written and changed market conditions, HUD determined it was necessary to rewrite the work requirements for the procurement.  *Id.*  In so doing, HUD determined that it was in the best interest of the Government to add a requirement that the prime contractor be an FHA Approved Mortgage Loan Servicer.  *Id.* at 7.  In addition, due to significant growth in the loan portfolio, HUD had an Independent Government Cost Estimate ("IGCE") prepared for the combined procurement, which estimated the cost for the combined loan servicing requirements as being ██% higher than the IGCEs for the previous SBA 8(a) solicitations.  *Id.*

### D.  HUD Conducts Market Research And Identifies Five Large Businesses That Are FHA-Approved HECM Loan Servicers

HUD conducted market research and identified five large businesses that were FHA Approved Mortgage Loan Servicers with specialized expertise in HECMs.  *See* Def.'s Mot. to Dismiss at 8.  HUD issued a Request for Information ("RFI") to the five businesses it identified, but of these, only one vendor, Celink, responded with an expression of interest.  *Id.*  HUD was unable to identify any small businesses or 8(a) firms that were FHA-Approved HECM Servicers.  Def.'s Mot. to Dismiss, Ex. B, at 9 (July 11, 2019 Letter from HUD to SBA) ("Market research indicated that there were no small businesses or 8(a) firms that were FHA-Approved HECM Servicers").

### E.  HUD Seeks Confirmation From The SBA That The Procurement Is A "New" Requirement

On July 11, 2019, HUD sent a letter to the SBA asserting that "HUD's new loan servicing requirement constitutes a new requirement from the previous loan servicing

---

[2] Ideogenics was initially awarded one of these procurements, but HUD cancelled that contract after Ideogenics was determined to be an "other than small business" in a size protest. *See Size Appeal of Equity Mortgage Solutions, LLC, re: Ideogenics, LLC*, SBA No. SIZ-5867, 2017 (S.B.A.), 2017 WL 6544259; *Ideogenics, LLC v. United States*, 138 Fed. Cl. 672 (2018) (Braden, C.J.), *appeal dismissed for failure to prosecute*, 2019 WL 718993 (Fed. Cir. Feb. 7, 2019).

requirements, and as such, does not require an adverse impact review in accordance with 13 C.F.R. § 125.504(c)(1)(ii)(C)."[3]  Def.'s Mot. to Dismiss, Ex. B, at 9 (July 11, 2019 Letter from HUD to SBA).  The letter explained that, "pursuant to 13 CFR § 124.504(c)(1)(ii)(C), the new loan servicing requirement is considered a new requirement, as the requirement has expanded, and the magnitude of change is significant enough to cause a price adjustment of at least 25 percent." *Id.*

On October 22, 2019, after Ideogenics had filed its bid protest, the SBA issued a decision concurring with HUD's determination that the procurement is "new."  *See* ECF No. 27, Ex. A (October 22, 2019 Letter from SBA to HUD).  Specifically, the letter stated: "Based on the information submitted in support of HUD's determination, we concur that the Solicitation contemplates a 'new' requirement and is therefore not subject to the 8(a) BD program's requirement for release."  *See* ECF No. 27, Ex. A (October 22, 2019 Letter from SBA to HUD).

*F.   HUD Issues Notice Of Intent To Award A Sole-Source Contract*

On August 1, 2019, HUD issued a Notice announcing that "[HUD] intends to negotiate a sole-source fixed-price contract for a 12 month base and four 12 month option periods with . . . Celink."  Compl., Ex. A (HUD's Notice of Intent to Award).  The Notice explained that:

> HUD has a requirement for a Federal Housing Administration (FHA) Approved Loan Servicer with a servicing portfolio of over 100,000 Home Equity Conversion Mortgage (HECM) Loans with specialized experience in the servicing of HECM, FHA insured and Secretary-held first, second, and subordinate notes and mortgages.
>
> . . .
>
> A Request for Information was sent to all responsible FHA Approved HECM servicers.  Celink was the only FHA Approved HECM servicer currently servicier [sic] to respond with interest in the requirement.

Compl., Ex. A (HUD's Notice of Intent to Award).

In addition, the Notice stated:

---

[3]  13 CFR § 124.504(c)(1)(ii)(C) provides: "The expansion or modification of an existing requirement will be considered a new requirement where the magnitude of change is significant enough to cause a price adjustment of at least 25 percent (adjusted for inflation) or to require significant additional or different types of capabilities or work."

> This Notice of Intent to Sole Source is not a request for competitive quotes. Information received in response to this notice will be considered solely for the purpose of determining whether a competitive procurement is in the best interest of the Government. If no written responses are received by [August 12, 2019], . . . the solicitation will be issued as a sole source requirement to Celink.
>
> . . .
>
> Interested parties may identify their interests and capability to [perform] this requirement to the [contracting officer] . . . by August 12, 2019.

Compl., Ex. A, at 2.

### G.  *Ideogenics Submits Capability Statement, Files Protest With GAO, and Files Pre-Award Bid-Protest*

On August 12, 2019, Ideogenics submitted a capability statement in response to the Notice. Def.'s Mot. to Dismiss, Ex. B, at 13–18. The capability statement stated that Ideogenics would serve as the prime contractor and that "through teaming [Ideogenics] is a Federal Housing Administration (FHA)-approved Home Equity Conversion Mortgage (HECM) Servicer. . . ." Standing alone, Ideogenics is not an FHA Approved HECM servicer. *See* Def.'s Mot. to Dismiss, Ex. B at 6, ¶ 34 (Decl. of Edgar Cross), Ex. B at 23–24 (HUD's Lender Database).

Immediately after submitting its capability statement, on August 12, 2019, Ideogenics filed a protest with the GAO. *See* Compl., Ex. E (GAO decision). On September 26, 2019, the GAO dismissed Plaintiff's protest as premature because "HUD ha[d] taken no adverse agency action such as, rejecting Ideogenics' capability statement and proceeding with a sole-source procurement." Compl., Ex. E at 2–3.

On October 7, 2019, Ideogenics filed this bid protest.

To date, HUD has not awarded the contract.

## II.    LEGAL STANDARDS

This Court's jurisdiction to entertain claims and grant relief depends on the extent to which the United States has waived sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399 (1976). The Tucker Act, as amended by the Administrative Disputes Resolution Act of 1996, 28 U.S.C. § 1491, grants this Court jurisdiction to adjudicate an action brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).

"The party seeking to invoke the [Court of Federal Claims'] jurisdiction must establish

that jurisdiction by a preponderance of the evidence." *Hymas v. United States*, 810 F.3d 1312, 1317 (Fed. Cir. 2016). When faced with a motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), the Court's inquiry starts with the complaint, "which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997). The Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). However, the Court is not restricted to the face of the pleadings and may consider evidentiary matters outside the pleadings. *Cedars-Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993). If the Court finds that it does not possess subject matter jurisdiction, the complaint must be dismissed. RCFC 12(b)(1).

## III.   DISCUSSION

Ideogenics' Complaint contains two counts. Count I alleges that HUD violated FAR § 19.815 and 13 C.F.R. § 124.504(d) by failing to request or receive approval from the SBA before removing the procurement from the SBA's 8(a) program. Count II alleges that, even if HUD received the SBA's release, the procurement was required to be awarded as a small business, HUBZone, SDVO small business, or WOSB set-aside under 13 C.F.R. § 124.504(d)(3). Compl. at 13–15. Notably, both counts are premised on the theory that the procurement at issue is a "follow-on" contract, rather than a "new" procurement.[4]

In its motion to dismiss, the Government contends that this bid protest should be dismissed on grounds of ripeness and standing. *See* Def.'s Mot. to Dismiss at 11–16. Principally, the Government argues that this suit is not ripe because the administrative agency, HUD, has not made a final contract award or reached a decision as to whether the procurement should be opened to competitive bidding. *Id.* at 11–14. With regard to standing, the Government argues that Ideogenics cannot establish that it has a "substantial chance" of receiving the award because Ideogenics is neither an FHA-Approved HECM Servicer nor an 8(a) small business. *Id.* at 14–16. Therefore, Ideogenics does not possess a direct economic interest necessary to establish standing.

For the reasons set forth below, the Court holds that Ideogenics' claims are ripe but Ideogenics lacks standing to pursue those claims.

### A. Ripeness

The ripeness doctrine is intended to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Eskridge Research Corp. v. United States*, 92 Fed. Cl. 88, 94 (2010) (quoting *Abbott Labs. v. Gardner*,

---

[4] By their express terms, FAR § 19.815 and 13 C.F.R. § 124.504(d) apply only to "follow-on" procurements.

387 U.S. 136, 148–149 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977)). Accordingly, a claim is not ripe if it is premised upon "future events that may not occur as anticipated, or indeed may not occur at all." *See Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agr. Prods., Co.*, 473 U.S. 568, 580–81 (1985)).

To be ripe for judicial review, an administrative action must satisfy both factors set forth by the Supreme Court in *Abbott Labs. v. Gardner*: (1) "the issues are fit for judicial decision— [i.e.,] there is a present case or controversy between the parties"; and (2) "there is sufficient risk of suffering immediate hardship to warrant prompt adjudication—[i.e.,] withholding judicial decision would work undue hardship on the parties." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1580–81 (Fed. Cir. 1993) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–149 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977)).

Here, the Government contends that Ideogenics's claims are not ripe because HUD has not made a final decision as to the award of the contract. Def.'s Mot. to Dismiss at 12–13. Instead, the Government characterizes the Notice as mere "market research." Tr. 13:2–21. According to the Government, HUD is still in the process of reviewing the capability statements submitted in response to the Notice, reviewing ancillary concerns and objections, determining whether to revise the procurement requirements, and deciding whether a competitive procurement is in the best interest of the Government. Def.'s Mot. to Dismiss at 12–13. The Government muses that HUD could conceivably, at any point, decide to cancel the procurement and obtain the services through a different contracting vehicle. *Id.* at 13.

The Government's arguments in this regard are unpersuasive. As an initial matter, the Court's jurisdiction over pre-award bid-protests extends to "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." *See* 28 U.S.C. § 1491(b)(1). In this case, Ideogenics has alleged that HUD violated two regulations, FAR § 19.815 and 13 C.F.R. § 124.504(d), in connection with a procurement for loan servicing. As such, Ideogenics' claims facially fall within this Court's Tucker Act jurisdiction.

The Government's attempt to characterize the Notice as market research is unavailing. *See* Tr. 13:2–21. Before issuing the Notice, HUD conducted market research and requested information from all companies it considered eligible for the award. *See* Def.'s Mot. to Dismiss at 8 ("HUD's market research identified five large businesses that are FHA approved mortgage servicers with specialized experience in HECMs or reverse mortgages."); *Id.*, Ex. B at 9 ("Market research indicated that there were no small businesses or 8(a) firms that were FHA-Approved HECM Servicers"). Celink was the only such company to respond. Thereafter, HUD issued a Notice of Intent to Sole Source, which listed the requirements of the procurement and stated that HUD "intends to negotiate a sole-source fixed-price contract for a 12 month base and four option periods with . . . Celink." Compl., Ex. A. In short, HUD conducted its market research, identified eligible companies, and then issued the Notice delineating the type of contract that will be awarded, the services that will be procured, the term and option periods, and the awardee. If this were not sufficient for ripeness purposes, it is unclear what would be.

At this point in the procurement, there are two decisions that HUD has made regarding this procurement, even if additional criteria should be added in the future. First, this is not a

follow-on contract; therefore, the procurement can be removed from the SBA's 8(a) program. Second, a potential bidder must be an FHA Approved Mortgage Loan Servicer. The Plaintiff's complaint is directed at HUD's decision to remove the procurement from the 8(a) program. Therefore, the 8(a) issue is ripe for judicial resolution.

The fact that the Notice invites capability statements from "interested parties" does not mean that what HUD has decided so far is unripe.[5] According to the Government, the purpose behind the request for capability statements is for HUD to determine whether this procurement should be sole-sourced. There is nothing to indicate that HUD's decision to remove the procurement from the 8(a) program and that its FHA Approved Mortgage Loan Servicer requirement would not apply, regardless of HUD's decision to make this procurement sole source rather than to open it up to competitive bidding.[6]

Finally, the Government's argument that the Notice is not a final agency decision because HUD could conceivably cancel the solicitation and procure the requirements in a different manner, is of no moment. *See Mgmt and Training Corp. v. United States*, 115 Fed. Cl. 26, 38 (2014) ("Defendant's categorical position that there can be no final decision unless there has been a solicitation, is contrary to statute as well as precedent."). The same could be said of any pre-award bid protest. As explained above, the Tucker Act empowers this Court to hear claims based on "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." *See* 28 U.S.C. § 1491(b)(1). To accept the Government's argument that a pre-award bid protest is not ripe until an agency makes a final award would be to eviscerate the Court's jurisdiction over pre-award bid protests.

In sum, Ideogenics complains that it is disadvantaged because HUD wrongly removed this procurement from the 8(a) program. Thus, Ideogenics has shown that withholding judicial decision would work undue hardship on the parties." *See Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1580–81 (Fed. Cir. 1993). Although the Government contends that Ideogenics is not qualified for the award of the contract, and therefore cannot establish hardship, this argument is more properly considered in the standing context. Looking to the claims presented in its Complaint, Ideogenics has established that its claims are ripe.

Accordingly, Ideogenics' allegations that HUD violated certain regulations in connection with a procurement or proposed procurement establishes a case or controversy between the parties, and Ideogenics' inability to compete for a contract that it believes itself qualified for

---

[5] HUD has received capability studies, indeed, one from the Plaintiff. *See* Def.'s Mot. to Dismiss, Ex. B, at 13–18.

[6] This is particularly so when the Notice explains that "This Notice of Intent to Sole Source is not a request for competitive quotes." *See* Compl., Ex. A at 2 ("Interested parties may identify their interests and capability to this requirement . . . by August 12, 2019."). In fact, the Notice states that "If no written responses are received by [August 12, 2019] . . . the solicitation will be issued as a sole source requirement to Celink." Id. Thus, under the express language in the Notice, Celink was to be awarded the contract on August 12, 2019, so long as HUD received no indications of interest from any interested parties.

establishes hardship.  Therefore, Ideogenics' claims are ripe.  However, as explained below, the Court finds that Ideogenics lacks standing to pursue its claims.

### B.   Standing

"The party invoking federal jurisdiction bears the burden of establishing standing." *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353 (Fed. Cir. 2018).  Under the Tucker Act, an "interested party" may object "to a solicitation . . . for bids or proposals for a proposed contract" or to "any alleged violation of statute or regulation in connection with a procurement or proposed procurement."  *See* 28 U.S.C. § 1491(b)(1).  The Federal Circuit has explained that, in bid protest cases, standing "is limited to actual or prospective bidders whose direct economic interest would be affected by the award of the contract or by the failure to award the contract.  *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009); *Am. Fed'n of Gov't Employees*, 258 F.3d 1294, 1302 (Fed. Cir. 2001).  To prove a direct economic interest, the plaintiff must "establish that it had a 'substantial chance' of receiving the award."  *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006); *see also Info. Tech & Applications v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) ("To establish prejudice, [the protestor] must show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process.").

Here, Ideogenics' Complaint alleges that HUD violated FAR § 19.815 and 13 C.F.R. § 125.504(d) by failing to receive prior approval from the SBA before removing the "follow-on" procurement from the 8(a) program.  The Complaint further alleges that even if HUD had received the SBA's release, HUD would then be required to award the contract as a small business, HUBZone, Service Disabled Veteran Owned ("SDVO"), or Women Owned Small Business ("WOSB") set-aside, which Ideogenics could compete for.  As Ideogenics submitted a capability statement in response to the Notice, Ideogenics claims to be an "interested party" with a "direct economic interest" in the award.

Ideogenics appears to have established that it is an "actual or prospective bidder"—i.e., an "interested party."  Ideogenics submitted a capability statement and is allegedly at a disadvantage because HUD has removed the procurement from the 8(a) program.  Thus, if HUD decides to open up the procurement for competitive bidding, there is an alleged negative impact on Ideogenics' direct economic interest in obtaining the award.  However, Ideogenics does not, and cannot, establish that it has a "substantial chance" of receiving the award, and therefore lacks standing.

Count I of Ideogenics' Complaint alleges that HUD improperly removed the procurement from the SBA's 8(a) program, thereby violating FAR § 19.815 and 13 C.F.R. § 125.504(d).[7] Compl. at 13–14.  Ideogenics' allegation in this regard is puzzling because Ideogenics is no

---

[7] These provisions are substantially identical and state that if a procurement has been placed in the SBA's 8(a) program, any follow-on requirements must remain in that program unless there is a mandatory source or the SBA agrees to release the procurement from the 8(a) program.  *See* FAR § 19.815 and 13 C.F.R. § 125.504(d).

longer an 8(a) small business.  Indeed, the SBA's database shows that Ideogenics graduated from the SBA's 8(a) program in 2017.  *See* Def.'s Mot. to Dismiss, Ex. B, at 20 (SBA profile of Ideogenics, LLC).  Consequently, assuming *arguendo* that Ideogenics is correct in that HUD was required to keep this procurement in the SBA's 8(a) program, Ideogenics would not be eligible for the award.

Ideogenics claims that if the procurement were in the 8(a) program, "Ideogenics could bid under an 8(a) team or 8(a) joint venture."  Compl. at 14.  This claim, however, is speculative at best and certainly fails to establish that Ideogenics would have a "substantial chance" of receiving the award.  Ideogenics is the sole plaintiff in this protest and has not moved to join any other company that might fulfill the procurement's requirements.  As Ideogenics, standing alone, is not an 8(a) small business, it would not have any chance, let alone a "substantial chance," of receiving the award if the procurement were to be placed in the SBA's 8(a) program.  *See Myers Investigative and Security Servs., Inc. v. United States*, 275 F.3d 1366, 1370–71 (Fed. Cir. 2002) ("Although [the plaintiff] need not show it would have received the award in competition with other hypothetical bidders, it must show that it would have been a qualified bidder.").  Therefore, Ideogenics lacks standing to challenge HUD's alleged improper removal of the requirement from the SBA's 8(a) program.[8]

Count II of Ideogenics' complaint is a bit more nuanced.  In this Count, Ideogenics claims that, even if HUD obtained SBA's release to remove the procurement from the 8(a) program, HUD would be required to award the contract as a small business, HUBZone, SDVO small business, or WOSB set-aside under 13 C.F.R. § 124.504(d)(3).  Compl. at 14–15.  Although Ideogenics graduated from the SBA's 8(a) program in 2017, Ideogenics still holds a HUBZone certification.  *See* Compl. at 4; Def.'s Mot. to Dismiss, Ex. B, at 20 (SBA profile of Ideogenics, LLC).  According to Ideogenics, this means that it is qualified for the award.  *See* Compl. at 4.

In its motion to dismiss, however, the Government argues that Ideogenics lacks standing to raise this challenge because Ideogenics is not an FHA-Approved HECM loan servicer.[9]  Def.'s Mot. to Dismiss at 15–16.  On the other hand, Ideogenics contends that, in order to comply with 13 C.F.R. § 124.504, HUD must rescind the notice and issue a new solicitation.  Pl.'s Reply and Resp. at 10 n. 3, 14.  At oral arguments, Ideogenics maintained that the FHA-

---

[8] It is worth noting that SBA issued a decision on October 22, 2019, stating that it concurred with HUD that "the Solicitation contemplates a 'new' requirement and is therefore not subject to the 8(a) BD program's requirement for release."  *See* ECF No. 27, Ex. A (Letter from SBA to HUD).  The Government submitted the SBA decision to the Court on October 23, 2019.  *See* ECF No. 27.  At the hearing on November 7, 2019, Ideogenics' counsel revealed that he had not seen this decision.

[9] The Government also contends that Ideogenics does not meet the other requirements listed in the Notice—namely the required HECM experience and capacity and experience servicing FHA insured and Secretary-held first, second, and subordinate notes and mortgages.  Def.'s Mot. to Dismiss at 15 n. 5.  However, there is no need to discuss these additional requirements as the Court finds the FHA certification issue dispositive.

Approved HECM servicer requirement may not be included in the new solicitation, and likely cannot be, since HUD identified no small businesses or 8(a) firms that hold this certification.  Tr. 5:12–7:13.  However, this argument is directly contrary to Ideogenics' brief, which states: "Clearly the Notice is a definitive procurement action containing a requirement that will not go away."  Pl.'s Reply and Resp., at 10 n. 2.  As such, the Court agrees with the Government that Ideogenics has failed to establish it has a "substantial chance" of receiving the award for standing purposes.

It is undisputed that Ideogenics, by itself, if not an FHA-Approved loan servicer.  To the extent Ideogenics contends that this requirement may not be "final," this position is contradicted by Ideogenics' own brief.  *See* Pl.'s Reply and Resp., at 10 n. 2 ("Clearly the Notice is a definitive procurement action containing a requirement that will not go away.").  Furthermore, if the Court were to accept Ideogenics' position that the Notice is not final, then the Court would necessarily have to find that the matter is not "ripe."  As explained above, the Court agrees with Ideogenics that this matter is ripe.  Since the Court determined that the Notice constitutes a final agency decision, and the Notice contains a requirement that Ideogenics does not satisfy, Ideogenics cannot have a "substantial chance" of receiving the award.  *Myers Investigative and Security Servs., Inc. v. United States*, 275 F.3d 1366, 1370–71 (Fed. Cir. 2002) ("Although [the plaintiff] need not show it would have received the award in competition with other hypothetical bidders, it must show that it would have been a qualified bidder.").  Consequently, Ideogenics has failed to carry its burden of establishing standing and the Government's motion to dismiss must therefore be granted.

## IV.   CONCLUSION

In sum, the Court finds that HUD's Notice constitutes a final agency action such that Ideogenics' pre-award bid protest is ripe.  Regarding Count I, Ideogenics does not have standing to contest HUD's removal of the 8(a) program requirement because Ideogenics does not qualify for the 8(a) program.  Regarding Count II, Ideogenics does have standing to contest HUD's removal of the 8(a) program requirement insofar as it could qualify under other programs if, as alleged in the complaint, HUD had properly removed this procurement from the 8(a) program.  Nevertheless, Ideogenics lacks standing because it is not an FHA-Approved HECM servicer.  Thus, even if Ideogenics qualified under the other programs mentioned in Count II, it still could not receive an award under this procurement.  Therefore, Ideogenics cannot "establish that it had a 'substantial chance' of receiving the award."  *See Myers Investigative and Security Servs., Inc. v. United States*, 275 F.3d 1366, 1370–71 (Fed. Cir. 2002) ("Although [the plaintiff] need not show it would have received the award in competition with other hypothetical bidders, it must show that it would have been a qualified bidder.").  Consequently, Ideogenics lacks standing to challenge HUD's actions as alleged in its complaint.  Therefore, the Court hereby **GRANTS** the Government's Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Ideogenics' complaint.

The clerk is directed to enter judgment accordingly.  The parties are directed file redactions to this opinion, if any, by no later than **Wednesday, November 27, 2019.**

**IT IS SO ORDERED.**

s/Edward J. Damich
EDWARD J. DAMICH
Senior Judge
